**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SPENCER LEE SCHNEIDER,

        Plaintiff,

        v.

OSG, LLC D/B/A ODYSSEY STUDY GROUP,
LORRAINE IMLAY and MINERVA TAYLOR,
both individually and as fiduciaries of the ESTATE
OF SHARON GANS HORN, and GREGORY
KOCH,

        Defendants.

Case No. 22-cv-7686-FB-VMS

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

April 26, 2023

Rhett O. Millsaps II
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055
rhett@lex-lumina.com
rtushnet@lex-lumina.com

*Counsel for Defendants*

Eva Posman
570 Lexington Avenue, Suite 1600
New York, NY 10022
(212) 661-9191
eposman@aol.com

*Co-counsel for OSG, LLC and Lorraine Imlay and
Minerva Taylor in their capacities as fiduciaries of
the Estate of Sharon Gans Horn*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………..iii

PRELIMINARY STATEMENT…………...………………………………………...1

FACTS ALLEGED………………………………………………………...………..2

ARGUMENT……………………………………………………………………...4

I.      RULE 12(b)(6) STANDARDS, INCLUDING FOR TVPA CLAIMS…...…………....4

II.     THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM UNDER THE
        PLAIN LANGUAGE OF THE TVPA ……...…………….…………….………...…..5

        A.      Schneider's § 1589 "Forced Labor" Claim is Frivolous on Its Face Because He
                Does Not Allege Any Serious Harm or Threats of Serious Harm...…..………......8

                1.      Schneider's Alleged Fear That Defendants Would "Publicly
                        Reprimand" and Humiliate Him Does Not Support a Claim of
                        Forced Labor……………………………………………………….…10

                2.      Schneider's Alleged Fear of Being Expelled from and Shunned by
                        OSG Does Not Support a Claim of Forced Labor…...………...………11

                3.      Schneider's Alleged Fear That He Would Lose His Largest Client
                        Does Not Support a Claim of Forced Labor……………………..………14

                4.      Schneider's Alleged Fear that OSG Might Disseminate His Private
                        Information Does Not Support a Claim of Forced Labor..…………....…15

                5.      Schneider's Alleged Fear that OSG Would Ensure that He Lost
                        Contact with His Child Does Not Support a Claim of Forced Labor....….16

        B.      Schneider's Section 1590 "Trafficking" Claim is Frivolous on Its Face....…...…16

        C.      The Complaint Additionally Fails On Its Face to Allege the Required Scienter
                for a Forced Labor or Trafficking Claim....……………..………………......17

III.    THE FIRST AND FOURTEENTH AMENDMENTS BAR APPLICATION OF
        THE TVPA IN THE MANNER URGED BY SCHNEIDER…………..….…..………19

IV.     THE TVPA'S 10-YEAR STATUTE OF LIMITATIONS BARS SCHNEIDER'S
        CLAIMS…...………………………………………………………..…………22

A.    Schneider's Section 1590 "Trafficking" Claim is Untimely on the Face of the Complaint......…...………………………………………………….……...23

B.    Schneider's Section 1589 "Forced Labor" Claim is Untimely on the Face of the Complaint......…...………………………...……………………….……...23

C.    Equitable Tolling Cannot Apply Here.……………………………....…………...24

V.    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CONSPIRACY CLAIM……25

CONCLUSION…………………………………………………………………………………..25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akhtar v. Vitamin Herbal Homeopathic Center Inc.*,
No. 19-CV-1422 (WFK) (RER), 2021 WL 7186030 (E.D.N.Y. Apr. 30, 2021)……...17, 23, 25

*A.Q.C. v. U.S.*,
656 F.3d 135 (2d Cir. 2011)……………………………………………………………...24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………………………………………………5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)……………………………………………………………………5

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000)……………………………………………………………………20

*Brandenburg v. Ohio*,
395 U.S. 444 (1968)……………………………………………………………………20

*DeCrescenzo v. Church of Scientology Int'l*,
CV 09-3984-GHK (Ex), 2009 WL 10672400 (C.D. Cal. Nov. 5, 2009)………………………25

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
No. 10–CV–1341(JFB)(ETB), 2012 WL 748760 (E.D.N.Y. 2012)……………….....11, 12, 14

*Ditullio v. Boehm*,
662 F.3d 1091 (9th Cir. 2011)……………………………………………………………23

*Effie Film, LLC v. Pomerance*,
909 F. Supp. 2d 273 (S.D.N.Y. 2012)……………………………………………………4

*Ellul v. Congregation of Christian Bros.*,
774 F.3d 791 (2d Cir. 2014)……………………………………………………………22, 25

*Garcia-Lopez v. Waste Management of Texas, Inc.*,
No. 22-20112, 2022 WL 17547458 (5th Cir. Dec. 9, 2022)………………………………...5, 12

*Gitlow v. New York*,
268 U.S. 652 (1925)……………………………………………………………………20

*Headley v. Church of Scientology International*,
    687 F.3d 1173 (9th Cir. 2012)……………………………………………………..9, 12, 13

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)……………………………………………………………3, 5

*In re Arb. Before New York Stock Exchange, Inc.*,
    No. 04 Civ. 488(RWS), 2004 WL 2072460 (S.D.N.Y. Sept. 8, 2004)…………………………7

*Katz v. Wanderstay Hotels, LLC*,
    No. 19 CV 3615 (RRM)(LB), 2021 WL 1093169 (E.D.N.Y. Mar. 4, 2021)…………………4

*Konstantinova v. Garbuzov*,
    Civ. No. 2:21-cv-12795 (WJM), 2022 WL 2128799 (D.N.J. June 14, 2022)…………… passim

*Lopez v. Nike, Inc.*,
    No. 20-CV-905 (PGG) (JLC), 2021 WL 128574 (S.D.N.Y. Jan. 14, 2021)…………………...21

*Merrill Lynch Bus. Fin. Svcs. Inc. v. Kentco N.Y. Ltd. et al.*,
    1:07-CV-04165 (E.D.N.Y. 2007)………………………………………………………...…6

*Muchira v. Al-Rawaf*,
    850 F.3d 605 (4th Cir. 2017)…………………………………………………………6, 9

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)…………………………………………………………………19, 20

*NAACP v. State of Ala. ex rel. Patterson*,
    357 U.S. 449 (1958)…………………………………………………………………13, 20

*Nabi v. Sells*,
    70 A.D.3d 252 (App. Div. 1st Dep't 2009)………………………………………………14

*Ngono v. Owono*,
    21 Civ. 95 (PGG) (SN), 2023 WL 2207587 (S.D.N.Y. Feb. 4, 2023)……………………...5, 17

*NLRB v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979)………………………………………………………………………21

*Nolan v. Western Regional Off Track Betting Corp.*,
    21-CV-922S, 2022 WL 7085517 (W.D.N.Y. Oct. 12, 2022)…………………………………23

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971)………………………………………………………………………20

*Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,*
    819 F.2d 875 (9th Cir. 1987)…………………………………………………..13

*Phillips v. Generations Family Health Ctr.,*
    723 F.3d 144 (2d Cir. 2013)………………………………………………...24

*Police Dept. of Chicago v. Mosley,*
    408 U.S. 92 (1972)……………………………………………………………19

*Rieger v. Dabrinsky,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)……………………………………..5

*Roberts v. United States Jaycees,*
    468 U.S. 609 (1984)………………………………………………….…..13, 20

*Rosenberger v. Rector and Visitors of Univ. of Va.,*
    515 U.S. 819 (1995)…………………………………………………….…...19

*U.S. v. Bradley,*
    390 F.3d 145 (1st Cir. 2004)………………………………………….9, 12, 13

*U.S. v. Bradley,*
    545 U.S. 1101 (2005)……………………………………………………...…9

*U.S. v. Callahan,*
    801 F.3d 606 (6th Cir. 2015)……………………………………………….6

*U.S. v. Dann,*
    652 F.3d 1160 (9th Cir.2011)……………………………………………….13

*U.S. v. Rivera,*
    799 F.3d 180 (2d Cir. 2015)………………………………………………..8

*Velez v. Sanchez,*
    754 F. Supp. 2d 488 (E.D.N.Y. 2010)…………………………………..11, 22

*Velez v. Sanchez,*
    693 F.3d 308 (2d Cir. 2012)………………………………………………...11

*Wallace v. Jaffree,*
    472 U.S. 38 (1985)……………………………………………………...21, 23

*Wang v. Enlander,*
    17 Civ. 4932 (LGS), 2018 WL 1276854 (S.D.N.Y. March 6, 2018)…………………………8, 22

*Wechsler v. R D Management Corp.*,
   861 F. Supp. 1153 (E.D.N.Y. 1994)………………………………………………………7

*West Virginia Board of Education v. Barnette*,
   319 U.S. 624 (1943)…………………………………………………………………..20

**Constitutional Provisions**

U.S. Const. Amend. I…………………………………………………………...2, 13, 19, 20, 21
U.S. Const. Amend. XIV………..………………………………………………2, 13, 19

**Statutes**

18 U.S.C. § 1589……………………………………………………………………passim
18 U.S.C. § 1590……………………………………………………………………passim
18 U.S.C. § 1595……………………………………………………………………passim

22 U.S.C. § 7101(a)…………………………………………………………………....6
22 U.S.C. § 7101(b)(4)………………………………………………………………6

42 U.S.C. §§ 2000bb et seq……………………………………………………………21

**Rules**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………..passim

**Legislative History**

H.R. Conf. Rep. No. 106–939………..………………………………………………..8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants OSG, LLC d/b/a

Odyssey Study Group ("OSG"), Lorraine Imlay and Minerva Taylor, both individually and as

fiduciaries of the Estate of Sharon Gans Horn, and Gregory Koch (collectively, "Defendants")

submit this memorandum in support of their motion to dismiss the Verified Complaint of

Plaintiff Spencer Schneider in its entirety for failure to state a claim.

## PRELIMINARY STATEMENT

Schneider's complaint is a cacophony of contradictory and tabloid allegations that show

on their face that Schneider's claims that he was a subject of human trafficking and forced labor

are implausible and an insult to those the statute was designed to protect.

From 1989 to 2012, Schneider—an accomplished litigator based in Manhattan—was a

member of OSG, a spiritual group comprised of other educated professionals of substantial

abilities and means and based on the teachings of nineteenth-century mystic and spiritual teacher

George Gurdjieff. This action follows Schneider's purported memoir about his time with OSG,

which he published in July 2022, and which contains statements on nearly every page that

contradict Schneider's allegations here and show further that his claims are frivolous.[1]

But the Court need look only to the allegations on the face of the Complaint to dispose of

it. Schneider fundamentally alleges that he was "coerced" into performing labor for a spiritual

organization he voluntarily chose to join and participate in for 23 years—knowing that service to

the organization and his fellow members was a requirement of membership—because he feared

being expelled from the organization and losing contact with its members if he chose to stop

---

[1] Solely for the purposes of this motion to dismiss, Defendants do not dispute the well-pleaded facts alleged in the Complaint, and they limit their motion to the Complaint's allegations and matters of which the Court may take judicial notice. If Schneider does not discontinue this action, however, Defendants intend to move for sanctions based on the manifest deficiency of the Complaint as well as a litany of prior statements in Schneider's book and other published writings that contradict the Complaint's allegations and further show that this action is frivolous.

participating. If Schneider has pled a TVPA claim here, then every person who has spent time volunteering for his or her church or community or professional membership organization would suddenly have a TVPA claim upon becoming disillusioned and deciding to leave. Neither the TVPA itself nor our Constitution gives countenance to such an absurd result.

The Complaint must be dismissed for failure to state a claim for three independent reasons manifest on its face: (1) the allegations do not plausibly allege any claim under the Victims of Trafficking and Violence Protection Act of 2000, the Trafficking Victims Protection Reauthorization Act of 2003, and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (collectively, the "TVPA"); (2) application of the TVPA in the manner urged by Schneider is foreclosed by the First and Fourteenth Amendments of the U.S. Constitution; and (3) the allegations show on the face of the complaint that the asserted TVPA claims are barred by the applicable 10-year statute of limitations.

## FACTS ALLEGED

OSG (including its predecessor organization) was an "esoteric school" founded in or around 1980 by Alex and Sharon Gans Horn to promote the teachings of nineteenth-century mystic and spiritual teacher George Gurdjieff. Verified Complaint (Dkt. No. 1) ("Complaint" or "Compl.") ¶¶ 12-13, 29, 58, 65. OSG's membership was sophisticated, being comprised of "educated professionals, including business owners, educators, lawyers, physicians, executives, and money managers." *Id*. ¶ 21. Many of OSG's teachers began as students and had employment independent of OSG. *Id*. ¶ 49. The individual Defendants were teachers for OSG and members of its "inner circle" while maintaining independent employment: Taylor owned and operated a Manhattan employment recruiting agency; Imlay was a New York City public schoolteacher; and Koch was a construction manager of high-end real estate properties. *Id*. ¶¶ 17, 20, 22.

Like many of the world's great religions and spiritual philosophies, Gurdjieff's teachings espoused by OSG and other Defendants emphasized the importance of physical work and service to others for one's personal and spiritual growth. This included three "lines of work" within the organization (the "Gurdjieff Work"):

> (a) The "First Line of Work" consisted of the various exercises that were designed to "awaken" the Student and ultimately lead to their "evolution," i.e., achieve a higher success in life. The First Line of Work was purportedly 100 percent for the benefit of the Student personally.

> (b) The "Second Line of Work" consisted of the instances when the Student helped his neighbor—in this case other Students—to work on themselves, while also using those instances as a reminder to the Student to remember whatever the Student said to the other Students. The Second Line of Work was purportedly 50 percent for the benefit of the other Students and 50 percent for benefit of the Student personally.

> (c) The "Third Line of Work" consisted of instances where the Student gave 100 percent for the benefit of the Organization—to keep it functioning and maintained in all respects.

*Id*. ¶ 29. Participation in the Gurdjieff Work, including the Third Line of Work—providing service to help run OSG—was a condition of membership in OSG. *Id*. ¶ 30.[2]

Schneider joined OSG in 1989, when he was "29 years old and a junior lawyer" in New York City. *Id*. ¶¶ 55-56. Schneider also was a self-described "student of philosophy" at the time. *Id*. ¶ 58. Schneider voluntarily chose to join OSG after attending a free month of classes and an orientation in which OSG's rules were explained to him. *See* Compl. ¶¶ 57-58, 60-65. Under those rules, OSG members paid "tuition" or "tithing" fees to maintain membership in OSG, which included attending OSG classes twice weekly and participating in other group activities and occasional retreats in Montana or upstate New York. *Id*. ¶¶ 19, 23, 25, 33, 130, 145.

---

[2] The Court should not give credence to Schneider's conclusory allegation that the "primary purpose of the Organization and the Inner Circle was to make money," as Schneider pleads no facts to support it, and indeed it is belied by Schneider's specific allegations about OSG's teachings and the sophistication of its membership. *See*, *e.g.*, *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).

Schneider, having voluntarily decided to join OSG, and like other OSG members, also engaged in service to help run OSG as part of the Gurdjieff Work. *Id*. ¶ 29, 57-58, 60-65. This part of the Gurdjieff Work included occasional "physical labor in Montana, New York, and Massachusetts; recruitment of new prospective students; elaborate preparation for events; attendance at Class semi-weekly; cooking, cleaning, and chauffer services." *Id*. ¶ 24. OSG members were not compensated for such service; rather, it was a condition of membership in OSG made clear to all before they chose to join. *Id*. ¶ 30.

Schneider decided to leave OSG in or around the end of 2012, and he left the group by simply not returning to class. *Id*. ¶¶ 134-35, 165-67. Notably, Schneider does not allege that he sought permission to leave OSG or that anyone tried to persuade him, let alone forced him, to stay. After leaving OSG and beginning around 2016, Schneider wrote and published online blogs and numerous periodic articles about his purported experiences with OSG.[3] In July 2022, several months before he filed the Complaint, Schneider published his purported memoir, *Manhattan Cult Story: My Unbelievable True Story of Sex, Crimes, Chaos, and Survival* (the "Book"). Schneider promotes his Book and other publications on his publicly available website at www.spencer-schneider.com (last visited April 26, 2023), and he has given interviews for published tabloid press articles about the Book and this action over the last year. *See*, *e.g.*, www.the-sun.com/news/7646682/manhattan-cult-adam-drive-family-sharon-gans-lawsuit.

## ARGUMENT

## I.     RULE 12(b)(6) STANDARDS, INCLUDING FOR TVPA CLAIMS

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead

---

[3] For the purposes of this motion to dismiss, Defendants request that the Court take judicial notice only of the fact that Schneider published his Book and other writings and statements. *See Katz v. Wanderstay Hotels, LLC,* No. 19 CV 3615 (RRM)(LB), 2021 WL 1093169, at *1 n. 2 (E.D.N.Y. Mar. 4, 2021*); Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012).

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating the Complaint, the Court must accept as true all *well-pleaded* facts alleged that "plausibly give rise to an entitlement for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court need not give credence to "attenuated allegations" supporting a claim that "are contradicted both by more specific allegations in the complaint and by facts of which [the Court] may take judicial notice." *Hirsch*, 72 F.3d at 1095; *see also Rieger v. Dabrinsky*. 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that…are contradicted…by statements in the complaint itself") (collecting Second Circuit cases).

Courts have not hesitated to dismiss TVPA claims for "forced labor" and "trafficking" under Rule 12(b)(6) where, as here, the plaintiffs failed to plead facts sufficient to meet the requirements of the statute's plain language. *See*, *e.g.*, *Ngono v. Owono*, 21 Civ. 95 (PGG) (SN), 2023 WL 2207587 (S.D.N.Y. Feb. 4, 2023); *Konstantinova v. Garbuzov*, Civ. No. 2:21-cv-12795 (WJM), 2022 WL 2128799 (D.N.J. June 14, 2022); *Garcia-Lopez v. Waste Management of Texas, Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022) (affirming district court's Rule 12(b)(6) dismissal of TVPA § 1589 claims).

## II.    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM UNDER THE PLAIN LANGUAGE OF THE TVPA

A review of the TVPA's plain language, case law, and legislative history demonstrates that Schneider's allegations not only are insufficient as a matter of law to state a claim for forced labor or trafficking under the TVPA but are patently frivolous.

The essence of a claim for "forced labor" under 18 U.S.C. §1595 is that the plaintiff is held in some form of captivity and forced to perform labor against his or her will through threats of serious harm. 18 U.S.C. §1589 (defining "forced labor"). The TVPA was enacted "to combat

trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). Thus, "'forced labor' cases have involved circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others…and exploitation of the victim's lack of education and familiarity with the English language, all of which are 'used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) (quoting *U.S. v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015)) (collecting cases). By contrast, Defendants have been unable to locate any TVPA case that comes remotely close to Schneider's allegations and has survived a motion to dismiss.

Congress' stated "findings" in enacting the TVPA focus on protection of women and children, especially immigrants, "who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin." 22 U.S.C. § 7101(b)(4). Individuals the TVPA is designed to protect from "forced labor" are usually "lure[d]" into "networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models." *Id*.

Schneider, in stark contrast, was a highly educated, English-speaking, U.S.-born "student of philosophy" and 29-year-old lawyer in New York City when he joined OSG in 1989. Compl. ¶¶ 55-56, 58. Between 1994 and 2012—when he allegedly was being trafficked by Defendants— Schneider appeared as counsel of record in nearly two dozen cases at the district and appeals court levels in New York state and federal courts, including in this Court, representing sophisticated clients such as Merrill Lynch. *See*, *e.g.*, *Merrill Lynch Bus. Fin. Svcs. Inc. v.*

*Kentco N.Y. Ltd. et al*., 1:07-CV-04165 (E.D.N.Y. 2007) (Block, J.); *In re Arb. Before New York Stock Exchange, Inc.*, No. 04 Civ. 488(RWS), 2004 WL 2072460 (S.D.N.Y. Sept. 8, 2004); *Wechsler v. R D Management Corp*., 861 F. Supp. 1153 (E.D.N.Y. 1994).

While Schneider conclusorily alleges that Defendants maintained "absolute control" over him (Compl. ¶ 42), Schneider's own allegations make clear that he retained his free will during his 23 years as a member of OSG, and that he in fact asserted his will without adverse consequences. For instance, Schneider alleges that the head of OSG, Sharon Gans Horn, at some point in the 1990s instructed him to have a child with his then-wife's 19-year-old daughter. *See* Compl. ¶ 119. But Schneider avers that he "rejected the idea" without any consequences. *See id*. Similarly, Schneider alleges that Gans Horn instructed him to let his wife have custody of their child upon their divorce in 2010, but that "[c]ontrary to the direction of Gans Horn, and at the advice and assistance of his matrimonial lawyer, SCHNEIDER ultimately obtained joint custody of the child." *Id*. ¶ 120. This was at least two years before Schneider left OSG, and Schneider glaringly does not allege that any threats or adverse consequences followed. By his own account, Schneider—himself an accomplished litigator—had no problem rejecting the ideas or instructions of Defendants and obtaining, and successfully following, advice from his own legal counsel when he saw fit.

Put plainly, this action makes a mockery of the TVPA. Not only are Schneider's claims an insult to those the TVPA was designed to protect because of his education, abilities, and means, but they fail on their face to state a claim for "trafficking" or "forced labor" because Schneider does not and cannot allege that Defendants used threats of "serious harm" to coerce him to join OSG or to obtain his labor or services.

**A.    Schneider's § 1589 "Forced Labor" Claim is Frivolous on Its Face Because He Does Not Allege Any Serious Harm or Threats of Serious Harm.**

18 U.S.C. § 1595 provides that "an individual who is a victim of a violation" of the forced labor statutes "may bring a civil action" against someone who has "obtain[ed] the labor or services of [that] person by any one of, or by any combination of" designated means set forth in 18 U.S.C. §1589(a), including "by means of serious harm or threats of serious harm to that person or another person," *id.* § 1589(a)(2), or by means of a "scheme, plan, or pattern intended to cause a person to believe" that such harm would occur. *Id.* § 1589(a)(4).

The statute defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is *sufficiently serious…to compel a reasonable person of the same background and in the same circumstances* to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2) (emphasis added). Thus, § 1589 was intended to "provide federal prosecutors with the tools to combat severe forms of worker exploitation" and to address situations in which "traffickers threaten harm to third persons" or "restrain their victims without physical violence," all while taking into account "the individual circumstances of [the] victim[ ]…including age and background." H.R. Conf. Rep. No. 106–939, at 101.

The Second Circuit applies a "hybrid" standard to determine whether the threatened harm is "sufficiently serious to coerce a plaintiff to provide labor against her will." *Wang v. Enlander*, 17 Civ. 4932 (LGS), 2018 WL 1276854, *5 (S.D.N.Y. March 6, 2018). This standard "'consider[s] the particular vulnerabilities of a person in the victim's position but…her acquiescence [must] be *objectively reasonable* under the circumstances,' taking into consideration whether 'a reasonable person of the same background and circumstances would have also felt coerced.'" *Id*. (quoting *U.S. v. Rivera*, 799 F.3d 180, 186–87 (2d Cir. 2015))

8

(emphasis added); *see also Muchira*, 850 F.3d at 618 (adopting the Second Circuit's hybrid standard). On a forced labor claim, the "test of undue pressure is an objective one, asking how a reasonable employee would have behaved." *U.S. v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005).

The Ninth Circuit's decision in *Headley v. Church of Scientology International*, 687 F.3d 1173 (9th Cir. 2012), is instructive and demonstrates why this requirement of the TVPA's plain language is fatal to Schneider's Complaint on its face.[4] First, the Complaint does not allege a single actual threat of harm, let alone serious harm, by any of the Defendants toward Schneider. Rather, Schneider's allegations focus largely on "the discipline, lifestyle, and familial constraints imposed as part of" OSG's alleged membership rules, which ultimately caused Schneider to *leave* OSG. *See* 687 F.3d at 1180; Compl. ¶¶ 165, 167 (alleging that Schneider left when in 2012, after more than two decades, he "finally started to become disillusioned" with OSG because of its practices as well as his divorce from his wife and a dispute with his client, both members of OSG).

Schneider's only allegations of threats of "serious harm" are the following:

> In sum, SCHNEIDER performed such labor and services because he feared that if he did not, the Organization and the Inner Circle would (a) publicly reprimand him, leaving him humiliated; (b) tell him to [sic] he could no longer serve as one of the Students and the other Students would not be permitted to have any communication with him, leaving him rudderless, virtually wholly alone, without his support network, and without his largest client (Student #2) (which would cause him a significant financial strain), (c) the Organization might disseminate the sensitive information that he had shared with it over the years, including that he was sexually abused as a child, and (d) ensure that he lost contact with the

---

[4] *Headley* was decided on summary judgment, but the facts alleged in the complaint in that case were far more severe than anything that Schneider alleges in his Complaint and did not suffer from the same kind of internal contradictions and statements against interest that permeate the Complaint here. It was only through extensive discovery that the *Headley* defendant established the true facts, or lack of facts, resulting in summary judgment. Indeed, even after discovery, the facts in the *Headley* record established far more severe conduct by the defendant than that alleged here, but still were held to fail to establish a claim. Given that the facts in *Headley* were insufficient to state a claim for "forced labor" under the TVPA, Schneider's allegations here are manifestly insufficient.

child he shared with Student #1, which collectively and in isolation amounted to serious harm as defined in 18 U.S.C. § 1589(c)(2).

Compl. ¶ 127.

As an initial matter, <u>nowhere</u> in the Complaint does Schneider allege that any of the Defendants (or anyone else) <u>actually threatened</u> any of these consequences if Schneider refused to perform any act of service or labor or left OSG. Rather, Schneider bases his alleged fear of these consequences on his alleged knowledge and observation of OSG's membership rules and practices. This is insufficient as a matter of law to state a "forced labor" claim under § 1589. *See Konstantinova*, 2022 WL 2128799 at *3 (ruling that the plaintiff failed to allege threats of "serious harm" to obtain forced labor where the plaintiff "conclude[d] she was 'made to understand' and 'implicitly threatened' that she would be cut off from financial resources unless she continued to work for Defendants").

Even if Defendants had explicitly threatened these consequences, however, they do not constitute threats of "serious harm" under § 1589 because, objectively, they are not sufficiently serious to compel a reasonable person of the same background and circumstances as Schneider— an educated student of philosophy and successful New York litigator—to remain a member of, or involuntarily perform labor and services for, OSG. Indeed, Schneider's own contradictory allegations in the Complaint make that clear.

### 1. Schneider's Alleged Fear That Defendants Would "Publicly Reprimand" and Humiliate Him Does Not Support a Claim of Forced Labor.

Schneider's allegation that he performed labor and services for OSG because he feared that if he did not, Defendants would "publicly reprimand him, leaving him humiliated," Compl. ¶ 127, is contradicted by his own allegations that OSG went to great lengths to "remain invisible" to the public. *Id*. ¶ 32. While Schneider alleges that OSG members were reprimanded privately

within the group, *see id.* ¶ 99, Schneider does not and cannot allege that Defendants ever made any public statement about OSG or its members, let alone publicly reprimanded any of its members. And, significantly, Schneider does not allege that any of Defendants ever actually threatened him with public reprimand.

In any event, public or private reprimand by Defendants does not constitute "serious harm" under the TVPA, and it is preposterous for a successful federal litigator like Schneider to allege otherwise. *See*, *e.g.*, *Velez v. Sanchez*, 754 F. Supp. 2d 488, 498 (E.D.N.Y. 2010) (Block, J.), *aff'd in part and rev'd in part*, 693 F.3d 308 (2d Cir. 2012) ("verbal abuse is not actionable under § 1595 unless it carries with it a threat of force or serious harm."); *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, No. 10–CV–1341(JFB)(ETB), 2012 WL 748760, at *7 (E.D.N.Y. 2012) (ruling that allegations that defendants "threatened to fire plaintiffs or berated plaintiffs in public for not finishing their work" did not state a claim under § 1589).

### 2. *Schneider's Alleged Fear of Being Expelled from and Shunned by OSG Does Not Support a Claim of Forced Labor.*

Schneider's allegation that he performed labor and services for OSG because he feared that if he did not, Defendants would "tell him to [sic] he could no longer serve as one of the Students and the other Students would not be permitted to have any communication with him, leaving him rudderless, virtually wholly alone, without his support network, and without his largest client (Student #2)" does not constitute a threat of "serious harm" under § 1589 for several reasons. Compl. ¶ 127.

*First*, Schneider simultaneously alleges both that serving as a member of OSG was "forced labor" (*see id.* ¶ 125), and that being expelled from OSG—and thus freed from his alleged traffickers who forced such labor—would constitute "serious harm" under the TVPA. *Id.* ¶ 127. The only inference to be drawn from the latter allegation (and his remaining with OSG for

23 years) is that Schneider wanted to remain a member of OSG—he just didn't want to honor the group's service requirement for members. Schneider's apparent desire to continue "serv[ing] as one of the Students," albeit on his own terms, undercuts his allegation that he was held against his will by OSG. *See Garcia-Lopez*, 2022 WL 17547458 at *2 (affirming Rule 12(b)(6) dismissal of TVPA § 1589 claims where plaintiff's "assertion that he wanted to 'keep his job' undercuts the statutory requirement that his employment be involuntary"); *Headley*, 687 F.3d at 1180 (noting a similar contradiction by Headley, who "left [Scientology] after she was unable (in light of a restrictive marriage policy) to keep her position in the Religious Technology Center—the very position in which, she now contends, she was long forced to labor").

*Second*, by Schneider's own admission he understood when he joined OSG that membership in the group required payment of tuition for classes as well as a service commitment by members to help run the organization. *See* Compl. ¶¶ 30, 57-58, 61. Indeed, service to others is an integral part of the Gurdjieff Work espoused by OSG and practiced by its members. *See id*. ¶¶ 12, 29, 168. OSG, like any other member-run organization, has every right to require service contributions by its members as a condition or cost of membership, and to expel (and threaten to expel) members who fail to contribute—just as an employer has every right to fire or threaten to fire an employee who fails to perform the requirements of his or her job. *See*, *e.g.*, *DeSilva*, 2012 WL 748760 at *7 (ruling that allegations that defendants "threatened to fire plaintiffs or berated plaintiffs in public for not finishing their work" did not state a claim under § 1589 because "these threats would merely be threats of adverse but legitimate consequences, and such threats do not constitute forced labor.") (citing and quoting *Bradley*, 390 F.3d at 151).

*Third*, Schneider's alleged fear of being shunned by OSG's members if he left the group is not a basis for a forced labor claim. As the *Headley* court succinctly explained:

> The one adverse consequence the Headleys could have faced, had they taken any of their many opportunities before 2005 to leave the Sea Org, was to have been declared "suppressive persons" and thus potentially to have lost contact with family, friends, or each other. But that consequence is not "serious harm"—and warning of such a consequence is not a "threat"—under the Trafficking Victims Protection Act. In applying the Act, we must distinguish between "improper threats or coercion and permissible warnings of adverse but legitimate consequences." [*Bradley*, 390 F.3d at 151]; *cf.* [*U.S. v. Dann,* 652 F.3d 1160, 1170 (9th Cir.2011)] (Act aims at *serious* trafficking and threats of *dire* consequences). This case involves the latter. A church is entitled to stop associating with someone who abandons it. *Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 883 (9th Cir. 1987) (holding that the free exercise clause protects the practice of shunning, explaining that when "[t]he members of [a] [c]hurch" "no longer want to associate with" someone who has "abandon[ed]" them, those members "are free" under the First Amendment "to make that choice"). A church may also warn that it will stop associating with members who do not act in accordance with church doctrine. The former is a legitimate consequence, the latter a legitimate warning. *Cf. Bradley*, 390 F.3d at 151. Neither supports a forced-labor claim.

687 F.3d at 1180. As explained in section III, *infra*, the Complaint shows on its face that OSG is a spiritual organization subject to the same First Amendment protections as Scientology. But the Headley court's reasoning applies here based on the First and Fourteenth Amendments' guarantees of freedom of association, whether or not OSG is considered a spiritual organization.

As the Supreme Court has explained:

> It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

*NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460-61 (1958) (citations omitted). *See also Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association… plainly presupposes a freedom not to associate").

### 3. *Schneider's Alleged Fear That He Would Lose His Largest Client Does Not Support a Claim of Forced Labor.*

Schneider's alleged fear that he would lose his largest client ("Student #2"), another OSG member, if he did not perform labor for or left OSG does not constitute a threat of "serious harm" for the same right of association reasons and more. Compl. ¶ 127. As an initial matter, Schneider does not allege that Defendants (or anyone else) ever actually threatened that he would lose Student #2 as a client if he refused to perform labor for OSG or left the group; rather, he alleges that he had this fear based on OSG's rules and the alleged termination of another OSG member's client relationship "because [that OSG member] did not follow Gans Horn's divorce directive." *Id*. ¶ 118. This is insufficient for Schneider to state a claim of forced labor. *See Konstantinova*, 2022 WL 2128799 at *3.

Such a threat would not constitute "serious harm" under the TVPA in any event. By Schneider's own account he obtained Student #2 as a client in or around 2000—and enjoyed the substantial benefits that apparently flowed to him from the relationship for over a decade—*because of his membership in OSG*. *See* Compl. ¶ 82. But Schneider was not entitled to this client relationship, as no lawyer is entitled to a particular client relationship, and in New York a "client has the right to discharge the attorney at any time, for any reason, or for no reason, regardless of any particularized retainer agreement, and the client should not be compelled to pay damages for exercising the absolute right to cancel the contract." *Nabi v. Sells*, 70 A.D.3d 252, 253 (App. Div. 1st Dep't 2009). Thus, threats that Student #2 would discharge Schneider "would merely be threats of adverse but legitimate consequences, and such threats do not constitute forced labor." *DeSilva*, 2012 WL 748760 at *7.

Moreover, Schneider once again contradicts himself on the face of the Complaint. Schneider alleges that one of the reasons he *decided to leave OSG* was "the refusal of Sharon

14

Gans Horn to assist in resolving a brewing and ongoing conflict with Student #2." Compl. ¶ 167.

It is frivolous for Schneider to allege that he was forced to labor for OSG under threats of losing

Student #2 as a client when he simultaneously alleges that his rocky professional relationship

with Student #2 was a reason that he left OSG. These allegations only illustrate how

unreasonable it was for Schneider allegedly to rely so heavily on a single client to sustain his law

practice. *See Id*. ¶ 126. Schneider's choice to wear golden handcuffs of his own making cannot

create liability for "forced labor" for either Defendants or his client.

### 4. *Schneider's Alleged Fear that OSG Might Disseminate His Private Information Does Not Support a Claim of Forced Labor.*

Schneider's allegation that he performed labor and services for OSG because he feared

that if he did not, Defendants "*might* disseminate the sensitive information that he had shared

with it over the years, including that he was sexually abused as a child," Compl. ¶ 127 (emphasis

added), is no basis for a forced labor claim here for several reasons. First, Schneider makes no

allegations that Defendants or anyone else actually ever threatened to disseminate private

information about Schneider, and Schneider makes no allegations that Defendants (or any other

OSG members) ever publicly disseminated information about any OSG member. He alleges that

he feared they *might* do so based on his allegations that Gans Horn essentially gossiped about

OSG members within the group. *See* Compl. ¶ 115. This does not support Schneider's

conclusory allegation that he feared Defendants would *publicly* disseminate such information;

this also is belied by his allegations of the secretive, non-public nature of OSG, *see id*. ¶ 32, and

is insufficient for Schneider to state a claim of forced labor. *See Konstantinova*, 2022 WL

2128799 at *3.

Second, the only information that Schneider alleges that he feared would be disseminated

was his disclosure of sexual abuse by an older male camp counselor when Schneider was

fourteen years old. *See* Compl. ¶¶ 126-27. Schneider appears to worry that this revelation would lead others to mistakenly believe that he is gay, and indeed alleges that after he left OSG, "Sharon Gans Horn (falsely) told other Students that SCHNEIDER was gay and had never once had sexual relations with his wife." *Id*. ¶ 116. Schneider's homophobia is not a basis for a § 1589 claim; having a teenage sexual abuse story revealed, or being falsely labeled gay, is not a plausible consequence of "serious harm," particularly for a man of Schneider's education, abilities, and means living in New York City.

### 5. *Schneider's Alleged Fear that OSG Would Ensure that He Lost Contact with His Child Does Not Support a Claim of Forced Labor.*

Once again, Schneider's own allegations on the face of the Complaint undermine his allegation that he performed labor and services for OSG because he feared that if he did not, Defendants would "ensure that he lost contact with the child he shared with Student #1…" Compl. ¶ 127. By Schneider's own account, Gans Horn allegedly instructed him to give up custody of his child when he and Student #1 divorced in 2010, but Schneider defied her and obtained—with the assistance of his own counsel—joint custody of their child. *See id*. ¶ 120. Schneider does not allege that Defendants or Student #1 ever threatened that he would lose contact with his child if he left or failed to perform labor or services for OSG, and this would not be a reasonable fear even if they had, given that Schneider himself is a litigator and already had obtained joint custody of the child in defiance of Gans Horn's alleged instructions. This is yet another implausible and conclusory allegation by Schneider that cannot support a forced labor claim. *See Konstantinova*, 2022 WL 2128799 at *3.

### B.     Schneider's Section 1590 "Trafficking" Claim is Frivolous on Its Face.

"Unlike involuntary servitude or force labor claims, which focus on the illicit means of maintaining subjugation, trafficking claims under Section 1590 focus on how a victim was

initially subjugated." *Akhtar v. Vitamin Herbal Homeopathic Center Inc.*, No. 19-CV-1422 (WFK) (RER), 2021 WL 7186030, at *9 (E.D.N.Y. Apr. 30, 2021). "Because the [Complaint] does not plausibly allege an independent TVPA forced labor violation under 18 U.S.C. § 1589…it also does not plausibly allege a 'trafficking' forced labor claim under 18 U.S.C. § 1590." *Ngono*, 2023 WL 2207587 at *7.

Moreover, Schneider does not even attempt to allege that he was coerced by any threat into joining OSG in 1989. Rather, Schneider—a "student of philosophy" and lawyer at the time—alleges that he decided to join OSG after attending a free month of classes and an orientation in which OSG's rules were explained to him. *See* Compl. ¶¶ 57-58, 60-65. Nothing that Schneider alleges about his recruitment to OSG comes close to meeting the plain language requirements of the TVPA. *See*, *e.g.*, *Ngono*, 2023 WL 2207587 at *7 (dismissing under Rule 12(b)(6) § 1590 claim where the plaintiff did "not plead facts demonstrating that [he] was 'coerced' into participating in the student loan fraud scheme" because the complaint did "not allege that Defendants threatened him with physical violence or restraint, or any other form of 'serious harm' when they proposed that he participate in this scheme"); *Akhtar*, 2021 WL 7186030 at *9 (explaining that "[u]nlike involuntary servitude or force labor claims, which focus on the illicit means of maintaining subjugation, trafficking claims under Section 1590 focus on how a victim was initially subjugated" and granting summary judgment on § 1590 claim because "[w]ithout an allegation that Defendants obtained Plaintiff's labor in violation of the TVPRA, Plaintiff's trafficking claim is his forced labor claim restated").

### C. The Complaint Additionally Fails On Its Face to Allege the Required Scienter for a Forced Labor or Trafficking Claim.

Sections 1589(a) and 1590(a) contain an express scienter requirement: "[w]hoever *knowingly* provides or obtains the labor or services of a person..." and "[w]hoever *knowingly*

recruits, harbors, transports, provides, or obtains by any means, any person for labor or services…" (emphasis added). Section 1589(a)(4) additionally contains a second scienter requirement: "by means of any scheme, plan, or pattern *intended* to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint" (emphasis added).

Even if Schneider's alleged fears discussed above were sufficient to state a claim under the TVPA, which they are not, Schneider's conclusory allegations that Defendants operated OSG as a scheme, plan, or pattern intended to coerce Schneider into performing labor and services against his will are belied by the other specific factual allegations in the Complaint and thus do not plausibly support a claim for relief. Specifically, Schneider alleges that OSG espoused Gurdjieff's teachings, which included teachings about the Gurdjieff Work and concomitantly required service to OSG as a condition of membership. *See id.* ¶¶ 12, 29-30, 168. He alleges that he decided to join OSG based on attending a month's worth of free classes and learning about OSG's membership rules, including that he, like other OSG members, would have to pay fees and do the Gurdjieff Work to remain a member. *See id.* ¶¶ 30, 57, 61. And he alleges throughout that OSG in fact provided classes, retreats, and other benefits like networking opportunities.

The only plausible inference that can be drawn from these allegations is that OSG operated as a fee-collecting, member-run organization that offered some benefit, intellectual or otherwise, to its members, particularly in light of Schneider's admission that OSG's membership was comprised of educated professionals like Schneider, himself a lawyer and student of philosophy. *See id.* ¶¶ 21, 55, 58. And the only plausible inference on the Complaint's allegations is that OSG's sophisticated members did the Gurdjieff Work because they, for whatever reason, believed it to be beneficial in some way. There is no non-conclusory allegation

18

in the Complaint from which an inference can be drawn that Defendants themselves did not believe in the Gurdjieff Work and its value. Accordingly, the Complaint fails on its face to allege the scienter required to state a claim and must be dismissed on that basis alone.

## III. THE FIRST AND FOURTEENTH AMENDMENTS BAR APPLICATION OF THE TVPA IN THE MANNER URGED BY SCHNEIDER

Because Schneider does not allege any actual threats of serious harm used to coerce membership in or labor for OSG, the gravamen of his Complaint, read as a whole, is that Defendants improperly used ideas and speech to recruit members to OSG, to convince them of the benefit of performing the Gurdjieff Work, to shame or humiliate them if they failed to do the Gurdjieff Work or lived up to the teaching's standards, and to instill a fear that they would lose the benefits of the Gurdjieff Work, and the associated community, if they stopped participating and left OSG. Indeed, all of the imagined harm that Schneider alleges coerced him into performing labor and kept him from leaving OSG stems from Schneider's alleged fear that OSG and its members would berate him if he failed to do the Gurdjieff Work and would shun him if he left the group. *See* Compl. ¶¶ 126, 127, 172.

This plainly cannot form the basis of a "trafficking" or "forced labor" claim under the TVPA, as it would impermissibly abridge OSG's and its members' rights of free expression and association under the First and Fourteenth Amendments of the U.S. Constitution. First, "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972)). Speech often is intended to have a psychologically coercive effect. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) ("The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment") (quoting *Org. for a*

19

*Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)); *Gitlow v. New York*, 268 U.S. 652, 673 (1925) ("Every idea is an incitement") (Holmes, J., dissenting). Nevertheless, such speech, even "advocacy of the use of force or of law violation," is protected except and only to the extent that it "'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Claiborne Hardware*, 458 U.S. at 927-28 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1968)).

Moreover, "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*, 468 U.S. at 622. "Government actions that may unconstitutionally burden this freedom may take many forms, one of which is 'intrusion into the internal structure or affairs of an association' like a 'regulation that forces the group to accept members it does not desire.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) (quoting *Roberts*, 468 U.S. at 623); *NAACP*, 357 U.S. at 460-61.

OSG and its members have every right to operate an organization to espouse Gurdjieff's teachings and the benefits of the Gurdjieff Work, to require as conditions of membership payment of fees and participation in the Gurdjieff Work, and to expel members who refuse to do the Gurdjieff Work or otherwise violate OSG's lawful membership requirements. Schneider's attempt to use the TVPA and this Court to punish Defendants for doing so because he now rejects their ideas and practices and regrets having participated in them for so long is repugnant to the freedoms of expression and association well established under our Constitution. As Justice Jackson eloquently stated in *West Virginia Board of Education v. Barnette*, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to

20

confess by word or act their faith therein." 319 U.S. 624, 642 (1943).

Additionally, it is clear from the face of the Complaint that OSG, in espousing and practicing the teachings of Gurdjieff, is a spiritual organization. *See* Compl. ¶¶ 12, 29, 58, 67.[5] The First Amendment's religion clauses thus apply to OSG and its members with the same force as they would apply to any other religious or spiritual organization. As the Supreme Court explained in *Wallace v. Jaffree*:

> Just as the right to speak and the right to refrain from speaking are complementary components of a broader concept of individual freedom of mind, so also the individual's freedom to choose his own creed is the counterpart of his right to refrain from accepting the creed established by the majority…the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all. This conclusion derives support not only from the interest in respecting the individual's freedom of conscience, but also from the conviction that religious beliefs worthy of respect are the product of free and voluntary choice by the faithful, and from recognition of the fact that the political interest in forestalling intolerance extends beyond intolerance among Christian sects—or even intolerance among "religions"—to encompass intolerance of the disbeliever and the uncertain.

472 U.S. 38, 52-54 (1985).

Accordingly, the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb et seq. ("RFRA"), prohibit application of the TVPA in the manner urged by Schneider because it would substantially and impermissibly burden OSG's and its members' free exercise rights by punishing OSG and its members for their protected beliefs and practices. The Court should construe the TVPA to avoid raising serious constitutional questions. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 506 (1979). And RFRA by its terms prospectively *amends* TVPA and compels that it not substantially burden the free exercise of religion, except in

---

[5] *See*, *e.g.*, https://www.britannica.com/biography/George-Ivanovitch-Gurdjieff (Gurdjieff was a "Greco-Armenian mystic and philosopher who founded an influential quasi-religious movement") (last visited April 26, 2023); *Lopez v. Nike, Inc.*, No. 20-CV-905 (PGG) (JLC), 2021 WL 128574, at *6 (S.D.N.Y. Jan. 14, 2021) (noting that courts may take judicial notice of encyclopedia entries in deciding a Rule 12(b)(6) motion to dismiss).

furtherance of a compelling government interest and by means that are least restrictive upon free exercise rights. The government's compelling interest to protect against forced labor is more than adequately furthered by traditional and "less restrictive means" without the massive religious entanglement that would result from application of TVPA in the manner urged by Schneider.

## IV.    THE TVPA'S 10-YEAR STATUTE OF LIMITATIONS BARS SCHNEIDER'S CLAIMS

The Second Circuit explicitly has held that the 2003 amendment that created a private cause of action under the TVPA does not apply retroactively because it "increases a party's liability for previously occurring conduct." *Velez*, 693 F.3d at 324-25 (affirming dismissal of TVPA claims on that basis). "Consequently, violations of § 1589 and § 1590 cannot be based on conduct that occurred before December 19, 2003…" *Wang*, 2018 WL 1276854 at *3. The "ten-year limitations period under the TVPRA begins to run when 'the cause of action arose.'" *Id.* (quoting 18 U.S.C. § 1595). Further, the Second Circuit has strictly limited the application of equitable tolling, holding that a TVPA claim must be dismissed based on a statute of limitations defense "if the complaint makes clear that the alleged wrongful conduct arose more than ten years before the claim was filed, and that the plaintiff has not been pursuing her rights diligently, and that no extraordinary circumstance stood in her way." *Id.* at *4 (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 800 (2d Cir. 2014)).

Even if the Complaint plausibly alleged a claim under the TVPA—which it does not, see sections II and III, *supra*—Schneider's claims under Sections 1589 and 1590 are barred by the applicable statute of limitations based on the allegations on the face of the Complaint. Additionally, matters of which the Court may take judicial notice show that Schneider did not pursue his rights diligently and that no extraordinary circumstances stood in his way of doing so, and thus equitable tolling cannot save Schneider's untimely claims.

A.    **Schneider's Section 1590 "Trafficking" Claim is Untimely on the Face of the Complaint.**

Schneider "cannot maintain a § 1590 claim based on his initial recruitment," as he joined OSG in 1989 (*see* Compl. ¶ 55)—long "prior to 2003, when the right of action under the TVPRA was established." *Akhtar*, 2021 WL 7186030 at *9 (citing *Ditullio v. Boehm*, 662 F.3d 1091, 1091 (9th Cir. 2011)).

B.    **Schneider's Section 1589 "Forced Labor" Claim is Untimely on the Face of the Complaint.**

Schneider's § 1589 claim for "forced labor" also is untimely on the face of the Complaint. Schneider does not and cannot plausibly allege that he was forced by Defendants to perform any labor in the ten years prior to filing his Complaint on December 16, 2022. *See* 18 U.S.C. § 1595(c). The only basis that Schneider alleges for his forced labor claim during that time period is that he attended an OSG class "in or about early January 2013," and, *"[a]s he had for all prior Classes*, SCHNEIDER and other Students set up the room where Class was held and cleaned up the room after Class ended." Compl. ¶ 134 (emphasis added). If this constituted forced labor, then Schneider's claim accrued long before January 2013. *See*, *e.g.*, *Nolan v. Western Regional Off Track Betting Corp.*, 21-CV-922S, 2022 WL 7085517, at *10 (W.D.N.Y. Oct. 12, 2022) ("Federal accrual occurs when Plaintiff has sufficient facts to file suit, not when every possible violation against him has occurred. Otherwise…Plaintiff would dictate the running of the statute of limitation by determining when he has been harmed enough, 'placing the supposed statute of repose in the sole hands of the party seeking relief'") (quoting *Wallace*, 549 U.S. at 391).

On Schneider's own allegations, however, attending, helping set up for, and helping clean up after class cannot constitute forced labor under the TVPA. Schneider alleges that, from the

beginning of his involvement with OSG, he did not expect compensation for attending classes but rather *paid to attend classes*. *See* Compl. ¶¶ 23, 57. While he alleges that he regularly helped other students set up for and clean up after OSG classes that he attended—and that performing labor and services for OSG generally was a condition of OSG membership (*see* Compl. ¶ 125)—nowhere does Schneider allege that he was forced to set up for or clean up after class in January 2013 (or at any time) by any means or threats of serious harm. On the contrary, Schneider alleges both that he understood when he joined that service to the group was a condition of membership (*see id*. ¶¶ 30, 61), and that he performed labor for OSG because he feared that if he did not, Defendants would, *inter alia*, "tell him to [sic] he could no longer serve as one of the Students" in OSG. *Id*. ¶ 127. In other words, Schneider paradoxically and implausibly alleges that Defendants forced him to serve as a student in OSG, which constituted forced labor, by means of the threat of *not being able to serve as a student* in OSG. Accordingly, because Schneider does not and cannot plausibly allege any instance of forced labor in the ten years prior to filing his Complaint, his Section 1589 claim is barred on its face by the TVPA's statute of limitations.

### C.    Equitable Tolling Cannot Apply Here.

Equitable tolling is "applicable only in rare and exceptional circumstances," where it is necessary "as a matter of fairness." *Phillips v. Generations Family Health Ctr*., 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks omitted). Equitable tolling requires a plaintiff to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [the] way" of his bringing a lawsuit. *A.Q.C. v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks omitted).

The allegations on the face of the Complaint and other matters of which the Court may take judicial notice demonstrate that Schneider cannot make the requisite showing for equitable

tolling in this case. Namely, Schneider himself is a successful litigator who has appeared in dozens of cases representing sophisticated clients, both before and after he left OSG, and by his own account he was able to hire counsel and obtain joint custody of his child—in alleged defiance of Gans Horns' directions—while he was a member of OSG. *See* pp. 5-6, *supra*; Compl ¶ 120. It taxes the credulity of the credulous for Schneider to assert that he diligently pursued his purported rights against Defendants, and that some extraordinary circumstance stood in the away of his bringing this action over the last ten years, *Ellul*, 774 F.3d at 800, when Schneider was busy writing and publishing blogs and articles and his Book about this matter, and thus equitable tolling does not apply. *See*, *e.g.*, *DeCrescenzo v. Church of Scientology Int'l*, CV 09-3984-GHK (Ex), 2009 WL 10672400, at *3 (C.D. Cal. Nov. 5, 2009).

## V.    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CONSPIRACY CLAIM

For all the same reasons that Schneider has failed to allege colorable "trafficking" or "forced labor" claims under the TVPA (*see* sections I-IV, *supra*), his claims for conspiracy or attempted violation of the statute must be dismissed as well. *See*, *e.g.*, *Akhtar*, 2021 WL 7186030 at *11 ("Having dismissed Plaintiff's trafficking and document servitude claims as asserted against Defendant Kunwar, conspiracy liability for those claims fail.").[6]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Schneider's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because Schneider cannot salvage the Complaint without making allegations that would contradict the already well-pleaded allegations that show that his claims are meritless, the Court should grant dismissal with prejudice.

---

[6] Even if Schneider stated a TVPA claim against OSG or the Horns estate, his conspiracy claim as against the individual Defendants must be dismissed because he does not allege the required scienter. *See* section II(C), *supra*.

Dated: April 26, 2023

Respectfully Submitted,

/s/ *Rhett O. Millsaps II*

Rhett O. Millsaps II
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055
rhett@lex-lumina.com
rtushnet@lex-lumina.com

*Counsel for Defendants*

Eva H. Posman
570 Lexington Avenue, Suite 1600
New York, NY 10022
(212) 661-9191
eposman@aol.com

*Co-counsel for OSG, LLC and Lorraine Imlay and Minerva Taylor in their capacities as fiduciaries of the Estate of Sharon Gans Horn*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2023, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss to be served by email upon the following:

>Elizabeth Geddes, Esq.
>Nadia Shihata, Esq.
>Shihata & Geddes LLP
>155 Water Street
>Brooklyn, New York 11201
>liz@shihatageddes.com
>nadia@shihatageddes.com
>
>*Attorneys for Plaintiff Spencer Lee Schneider*

<u>*/s/ Rhett O. Millsaps II*</u>

Rhett O. Millsaps II